Raymond L. SCHULTE, M.D., Plaintiff,

v.

Paul L. DOUGLAS, et al., Defendants.

Marvin L. DIETRICH, M.D., Plaintiff,

v.

Paul L. DOUGLAS, et al., Defendants.

Nos. CV81–0–162, CV81–0–197.

United States District Court,
D. Nebraska.

July 30, 1981.

## MEMORANDUM AND ORDER

URBOM, Chief Judge.

On June 22, 1981, this court preliminarily enjoined the enforcement of part of the Nebraska Criminal Code relating to abortions: §§ 28–329, 28–330, and 28–331, R.R. S.Neb. (Reissue 1979). Cross-motions for summary judgment are now on file. In support of their motions the parties rely upon the pleadings, affidavits and evidence presented before and affidavits presented after the filing of the motions.

The plaintiffs challenge the constitutionality of the three sections on the grounds that they are vague and overbroad, thereby depriving physicians, who are subject to felony criminal prosecutions for violation of the statutes, of due process of law.[1]

In *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979), the Supreme Court of the United States discussed the "void for vagueness" doctrine as it applies to restrictive abortion legislation. The court said:

"It is well settled that, as a matter of due process, a criminal statute that 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute,' ... or is so indefinite that 'it encourages arbitrary and erratic arrests and convictions,' ... is void for vagueness.... This appears to be especially true where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights...."

439 U.S. at 390–391, 99 S.Ct. at 683

It is also well settled that at least where certain "fundamental rights" are involved, such as the right of privacy as it pertains to abortion, state legislation limiting such rights may be justified only by a "compelling state interest" and must be narrowly drawn to express only the legitimate state interests at stake. *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973). Failure to confine such legislation renders the legislation unconstitutionally overbroad. *Roe v. Wade,* 410 U.S. at 164, 93 S.Ct. at 732.

With these standards of vagueness and overbreadth in mind I turn to an evaluation of the challenged portions of §§ 28–329, 28–330 and 28–331.

### A. Viability determination

Both §§ 28–329 and 28–330 impose restrictions on abortions after the point of viability. Section 28–326(6) defines viability as:

"... that stage of human development when the unborn child is potentially able

---

1. The statutes, with the challenged clauses underlined, are as follows:

Section 28–329 proscribes abortions after the time at which,

"... in the sound medical judgment of the attending physician, the unborn child clearly appears to have reached viability, except when necessary to preserve the woman from an imminent peril that substantially endangers her life or health."

Section 28–330 provides:

"In any abortion performed pursuant to section 28–329, all reasonable precautions in accord with the sound medical judgment of the

attending physician and compatible with preserving the woman from an imminent peril that substantially endangers her life or health, shall be undertaken to insure the protection of the viable, unborn child."

Section 28–331 provides:

"All reasonable steps, in accord with the sound medical judgment of the attending physician, shall be employed in the treatment of any child aborted alive with any chance of survival."

Section 28–332 provides that a violation of any of the above-quoted statutes is a class IV felony.

to live outside the womb of the mother by natural or artificial means."

The plaintiffs contend that this definition of viability is unconstitutionally vague and overbroad, in that it does not include the terms "meaningful" and "sustained"—additional qualifications the plaintiffs argue were imposed by the Supreme Court in *Roe v. Wade,* supra, and *Colautti v. Franklin,* supra.

It is true that in *Roe v. Wade,* supra, the Supreme Court spoke of viability not only as the point at which the fetus is "potentially able to live outside the mother's womb, albeit with artificial aid," 410 U.S. at 160, 93 S.Ct. at 730, but also as the point at which the fetus "has the capability of *meaningful* life outside the mother's womb." 410 U.S. at 163, 93 S.Ct. at 731 (emphasis added).

In *Colautti v. Franklin,* 439 U.S. at 387, 99 S.Ct. at 681, the court reiterated the "potentially able to live outside the mother's womb" viability definition of *Roe v. Wade,* supra, and continued:

"... We added [in *Roe*] that there must be a potentiality of 'meaningful life,' *id.,* at 163 [93 S.Ct. at 731], not merely momentary survival. And we noted that viability 'is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks.' *Id.,* at 160 [93 S.Ct. at 730]. We thus left the point flexible for anticipated advancements in medical skill."

439 U.S. at 387, 99 S.Ct. at 681

The *Colautti* court concluded:

"... Viability is reached when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' *sustained* survival outside the womb, with or without artificial support...."

439 U.S. at 388, 99 S.Ct. at 682 (emphasis added)

The plaintiffs argue that these additional qualifications give "specific and comprehensible guidance and direction" to physicians in determining viability (see affidavit of plaintiff Dietrich, filing 26) and that without these terms the definition of viability as set forth in § 28–326(6) and incorporated into §§ 28–329 and 28–330 (the latter by reference to and incorporation of § 28–329), is unconstitutionally vague and overbroad.

■ I agree with the plaintiffs that the definition of viability as stated in § 28–326(6) is in conflict with the definition of that term in *Roe v. Wade,* supra, and *Colautti v. Franklin,* supra. While it is not necessary that the definition of viability include the very terms "meaningful" and "sustained" or either of them,[2] it is necessary that the definition be limited to include only that stage of fetal development in which the potentiality for life is more than mere momentary survival. This the Nebraska definition fails to do.

The narrow scope of the Nebraska definition of viability is evidenced by the affidavit of Dr. Hilgers (defendant's Exhibit 14), in which Dr. Hilgers states that in his expert medical opinion, viability, as defined by § 28–326(6), is "clearly *present*" from and after the twentieth week of pregnancy. Such a limited definition of viability was not contemplated by *Roe* and its progeny. In *Roe v. Wade,* 410 U.S. at 160, 93 S.Ct. at 730, the court noted that viability as defined by the court "is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks." Because the time when viability is achieved may vary with each pregnancy, the court refused to specify a point in the gestation period as the point of viability but, rather, left the determination of whether a particular fetus is "capable of meaningful life outside the mother's womb" to the professional judgment of the attending physician. *Planned Parenthood of Missouri v. Danforth,* 428

2. See, for example, *Planned Parenthood of Missouri v. Danforth,* 428 U.S. 52, 63–64, 96 S.Ct. 2831, 2838, 49 L.Ed.2d 788 (1976), in which the Supreme Court of the United States upheld the constitutionality of a Missouri abortion statute defining viability as "that stage of fetal development when the life of the unborn child *may be continued indefinitely* outside the womb by natural or artificial life supportive systems." (Emphasis added)

U.S. 52, 64–65, 96 S.Ct. 2831, 2838–39, 49 L.Ed.2d 788 (1976). If, as Dr. Hilgers opines, the Nebraska definition of viability precludes a physician from finding that a fetus is not viable at any point in time after the twentieth week of pregnancy, the definition is clearly overbroad and must therefore be stricken as unconstitutional.

**B. Post-viability health exception**

The plaintiffs also challenge the constitutionality of the phrase "necessary to preserve the woman from an <u>imminent peril</u> that <u>substantially endangers</u> her life or health," which is found in both §§ 28–329 and 28–330. (challenged portions underlined)

■ The Supreme Court of the United States in *Roe v. Wade,* 410 U.S. at 163, 93 S.Ct. at 731, held that the state's important and legitimate interest in potential life becomes compelling at the point of viability and after that point, the state may go so far as to proscribe abortion "except when it is necessary to preserve the life or health of the mother." Section 28–329, in contravention to the standard articulated in *Roe,* permits an abortion after the point of viability only when it is necessary to preserve the woman from an *imminent peril* that *substantially endangers* her life or health. As I found in my June 22, 1981, memorandum granting a preliminary injunction, "imminent" and "substantial" are genuinely qualifying words of sharp effect.[3] As such, they render the health exception of § 28–329 unconstitutionally overbroad. See *Margaret S. v. Edwards,* 488 F.Supp. 181, 196 (U.S.D.C.E.D.La.1980) (holding unconstitutional a Louisiana statute permitting post-viability abortions only if necessary to prevent "permanent impairment" to her health).

Section 28–330, which requires a physician to use a particular abortion procedure once it has been determined that a fetus is viable, suffers from the same constitutional infirmity as § 28–329. The Court of Appeals for the Eighth Circuit recently stated in *Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft,* 655 F.2d 848 (8th Cir.1981):

"The State has regulated post-viability abortions by requiring use of particular methods. This is clearly within the State's power, as long as it does not interfere with medical judgments as to the substance rather than an accident or attribute...."

"Although the defendants argue that 'substantial' is intended only to proscribe 'purely speculative' or 'conjectural' or 'chimerical' perils, I think it sweeps a good deal broader than that. A word or words better fitted to the purpose could have been selected for such a limited meaning. While *one* of the meanings of 'substantial' may be 'real,' the other meanings, all importing more than mere reality, cannot be summarily eliminated. Appropos also is the familiar distinction in constitutional law between 'rational relationship' and 'substantial relationship,' the latter being a more demanding test than the former. Compare *Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979); *Michael M. v. Supreme Court,* 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); and *Navedo v. Preisser,* 630 F.2d 636 (C.A. 8th Cir.1980). Such a distinction is more than a difference between real and speculative or conjectural or chimerical."

*Id.,* at p. 4.

---

**3.** In the June 22, 1981, memorandum granting a preliminary injunction I rejected the defendants' argument that the challenged words were intended to proscribe abortions after viability only where the peril is purely conjectural or speculative:

"... 'Imminent' means 'likely to occur at any moment; impending.' Synonyms are 'near, at hand.' The word does not admit a peril some time away, even though certain to come. Of similar nature is 'substantial,' It means:

'adj. 1. of ample or considerable amount, quantity, size, etc.: *a substantial sum of money.* 2. of a corporeal or material nature; real or actual. 3. of solid character or quality; firm, stout, or strong: *a substantial physique.* 4. based on solid or firm essentials: *two stories in substantial agreement.* 5. wealthy or influential: *one of the substantial men of the town.* 6. of real worth, value, or effect; substantial reasons. 7. pertaining to the substance, matter, or material of a thing. 8. of or pertaining to the essence of a thing; essential, material, or important. 9. being a substance; having independent existence. 10. *Philos.* pertaining to or of the nature of

method necessary for the preservation of the life or health of the mother...."

*Id.,* at 863

Section 28–330 does "interfere with medical judgments as to the method for preservation of the life or health of the mother," because it demands a particular course of action even when in the physician's judgment a different course should be undertaken to preserve the mother from a *non-imminent* peril that endangers her life or health *substantially,* or from a *non-imminent* peril that endangers her life or health *less than substantially,* or from an *imminent* peril that endangers her life or health *less than substantially.* This the state has no authority to do.

C. "Sound medical judgment"

■ All three challenged sections of the Nebraska abortion laws premise conduct upon the exercise of "sound medical judgment of the attending physician." This phrase is used in reference to the viability determination required by § 28–329, the choice of abortion procedure required by § 28–330, and the treatment of a child aborted alive required by § 28–331. The plaintiffs argue that the sections, by the use of this phrase, contain a fatal ambiguity in that *none* specifies whether "sound medical judgment of the attending physician" describes a purely subjective standard or whether it describes a mixed subjective and objective standard. If, as the plaintiffs urge, the phrase "sound medical judgment of the attending physician" means that someone other than the attending physician shall determine whether the attending physician's judgment was "sound," the sections expose a physician to potential criminal liability for a medical decision which, under some unknown, undefined medical standard, was erroneous.

I am unpersuaded by the plaintiffs' argument. As I stated in the June 22, 1981, memorandum granting preliminary relief:

" 'Sound medical judgment' does not mean that the physician's judgment is susceptible to some other person's review to determine its soundness from a medical standpoint. The phrase is no more

objective than the phrase 'best clinical judgment,' which was approved in *Doe v. Bolton,* 410 U.S. 179, 191–192 [93 S.Ct. 739, 747, 35 L.Ed.2d 201] (1973). The adjectives are more an urging to the physician's subjective judgment than a warning of an objective overseeing by another. As judgment of a physician should be—is expected to be in all of his or her professional undertakings—*medical,* rather than personal, so it should be *sound,* rather than flippant or thoughtless. The judgment, in the final analysis, is to be the judgment 'of the attending physician' and of no one else. 'Sound medical judgment of the attending physician' gives the physician 'the room he needs to make his best medical judgment,' the term used in *Colautti v. Franklin,* 439 U.S. at 397 [99 S.Ct. at 686]."

*Id.,* at p. 3

See, also, *Roe v. Wade,* 410 U.S. at 165, 93 S.Ct. at 732, using the phrases "appropriate medical judgment" and "professional judgment;" and *Charles v. Carey,* 627 F.2d 772, 787 (C.A. 7th Cir.1980), holding that an Illinois abortion statute's requirement that a physician determine "in his best judgment" that an abortion is necessary was not unconstitutionally vague for purposes of a motion for preliminary injunction.

D. "All reasonable precautions"

■ Two other phrases attacked by the plaintiffs are "all reasonable precautions" in § 28–330 and "all reasonable steps" in § 28–331. I find that each of these phrases retains the subjective qualities of "sound medical judgment of the attending physician" and does not, therefore, go beyond constitutional boundaries. Indeed, the word "reasonable" serves to clarify further what is required of a physician by §§ 28–330 and 28–331 by making it clear that a physician is not required to take "heroic measures" to preserve the life of the unborn viable fetus or the child aborted alive, unless, of course, the physician in his or her sound medical judgment believes that such measures would be appropriate.

### E. Scienter

While §§ 28–329 through 28–331 are not facially unconstitutional for their incorporating the phrases "sound medical judgment," "all reasonable precautions," and "all reasonable steps," the sections are unconstitutional for a different reason—their failure to contain sufficient requirement of scienter or intent. Without that, physicians who perform abortions are subject to felony criminal prosecution for making a good faith, but erroneous, judgment.

The defendants do not dispute that some type of scienter must be required before a physician can be subjected to criminal liability for violation of the challenged sections [4] but, rather, assert that the challenged sections satisfy this requirement by their inclusion of the phrase "in the sound medical judgment of the attending physician." As to § 28–329, the defendants argue that the phrase extends not only to the viability determination but also to the health exception found in that section. As to § 28–330, the defendants urge that the "sound medical judgment" phrase applies not only to the determination of reasonable steps but also to the determination of whether a child is "aborted alive with any chance of survival." I must reject the defendants' argument.

I do agree with the defendants that, insofar as the statutes make the attending physician's subjective judgment the controlling standard, they contain a scienter provision. A physician cannot violate his or her own subjective judgment except knowingly. However, a careful reading of §§ 28–329 and 28–330 evidences that the phrase, "sound medical judgment of the attending physician," modifies only the viability-determination clause in each section and not the health-exception clause. In § 28–331 "sound medical judgment of the attending physician" modifies only "reasonable steps," not "any chance of survival." Thus, there is no scienter requirement as to a physician's decision that an abortion is necessary to preserve maternal health or as to a deci-

---

4. In *Colautti v. Franklin,* 439 U.S. at 394–397, 99 S.Ct. at 685–86, the Supreme Court recognized that the facial vagueness of the Pennsylvania viability-determination statute under attack was "compounded" by the fact that the statute subjected a physician to potential criminal liability without regard to fault. The court stated:

> "This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.* . . . Because of the absence of a scienter requirement in the provision directing the physician to determine whether the fetus is or may be viable, the statute is little more than 'a trap for those who act in good faith.' . . ."
> 439 U.S. at 395, 99 S.Ct. at 685

However, because the viability determination provision challenged in *Colautti* was found to be void on its face, the Supreme Court did not decide ". . . whether, under a properly drafted statute, a finding of bad faith or some other type of scienter would be required before a physician could be held criminally responsible for an erroneous determination of viability." *Id.,* at 396, 99 S.Ct. 686.

In *Planned Parenthood Association of Kansas City v. Ashcroft,* 483 F.Supp. 679, 692 (U.S.D.C.W.D.Mo.1980), the district court, presented with the question left undecided by the Supreme Court in *Colautti,* held:

> ". . . It is clear to this Court that strict criminal liability attendant upon an erroneous determination by a physician that a particular pregnancy had not yet reached that point of viability not only offends due process but denies the attending physician presented with a woman whose pregnancy is close to the point of viability 'the room he needs to make his best medical judgment.' . . ."

The court found that the Missouri law, like the law challenged in *Colautti,* required a culpable mental state as to the act of abortion (homicide) but not as to the viability determination. On appeal, *Planned Parenthood Association of Kansas City v. Ashcroft,* 655 F.2d 848 (8 Cir. 1981), the Court of Appeals for the Eighth Circuit reversed the district court, finding that Missouri law did require a culpable mental state as to the viability determination and was not, therefore, unconstitutionally vague. While the court of appeals did not expressly approve the district court's finding that the lack of scienter alone would render the viability-determination provision unconstitutional, the Eighth Circuit did state in this regard:

> ". . . Without a culpability requirement, the Missouri statute would create a 'profound chilling effect on the willingness of physicians to perform abortions near the point of viability in the manner indicated by their best medical judgment.' "
> *Id.,* at 861

sion that an aborted child is "alive with any chance of survival."

I find, therefore, the three sections to be unconstitutional for lack of required scienter. A physician under them faces potential criminal liability for even a good faith error in finding an abortion to be necessary for the preservation of maternal health (§§ 28–329 and 28–330) or judging an aborted child as having no chance of survival (§ 28–331). This is so, even though each of these decisions is engulfed in a cloud of medical uncertainty. Such potential criminal liability has had the chilling effect predicted by the court in *Colautti*—physicians are unwilling to perform abortions near the point of viability in the manner indicated by their best medical judgment.

### F. "Aborted alive with any chance of survival"

■ Finally, the plaintiffs challenge § 28–331, which establishes a standard of care for infants "aborted alive with any chance of survival." The plaintiffs argue—and I agree—that the quoted phrase is void for vagueness. The challenged phrase is without definition; yet, as noted above, a physician who erroneously determines that an aborted child is not "alive" or has "no chance of survival" and who therefore does not comply with the standard of care is subject to criminal felony prosecution.

The Court of Appeals for the Seventh Circuit addressed the constitutionality of a similar phrase in the Illinois criminal code— "any human being aborted alive"—as follows:

> " ... The meaning of the term 'alive' could include only the most minimal of life signs in a nonviable fetus or it could be limited to the capability of sustained survival. The lack of a precise definition leaves physicians uninformed as to their duties toward the fetus and could deter them from performing abortions for fear of being singled out for prosecution for murder under this ambiguous standard...."

*Charles v. Carey,* 627 F.2d at 791

The Nebraska statute suffers from the same ambiguity. The defendants urge, and I think accurately, that § 28–331 does not have to do with fetuses but with infants, the distinction being between the unborn and the born. That may, and I think does, make applicable a different set of interests on the part of the state. Nonetheless, no interest of the state abolishes the need for definiteness in the language of criminal statutes.

In summary, I find:

A. The definition of viability found in § 28–326(6) and incorporated into §§ 28–329 and 28–330 is unconstitutionally overbroad;

B. The health exception found in §§ 28–329 and 28–330 is unconstitutionally overbroad in its use of the phrase "imminent peril that substantially endangers;"

C. The phrases "sound medical judgment," "all reasonable steps," and "all reasonable precautions" in §§ 28–329, 28–330 and 28–331 are not unconstitutionally vague;

D. Sections 28–329 through 28–331 are unconstitutionally vague and overbroad in their failure to include sufficient scienter requirement; and

E. The phrase "aborted alive with any chance of survival" in § 28–331 is unconstitutionally vague.

IT THEREFORE HEREBY IS ORDERED:

1. That the plaintiffs' motion for summary judgment is granted, except as to the claim that the phrases "sound medical judgment," "all reasonable steps," and "all reasonable precautions" are unconstitutionally vague, as to which issue the plaintiffs' motion for summary judgment is denied and the defendants' motion for summary judgment is granted; and the defendants' motion for summary judgment is denied in all other respects;

2. That taxable court costs are assessed against the defendants;

3. That the plaintiffs are granted fifteen days from the date of this order in

which to file and serve affidavits in support of their request for attorney's fees under 42 U.S.C. § 1988, and the defendants shall have fifteen days thereafter to file and serve counteraffidavits and briefs; and

4. That judgment will be withheld until a ruling has been made regarding the amount of attorney's fees to be allowed.